UNITED STATES of America,
Plaintiff-Appellee,

v.

Austin HARRIS and Joseph Lyle,
Defendants-Appellants.

No. 15206.

United States Court of Appeals
Seventh Circuit.

March 25, 1966.

Rehearing Denied April 19, 1966.

Arvey Wolke, Jason E. Bellows, Sherman C. Magidson, Chicago, Ill., for appellants.

Edward V. Hanrahan, U. S. Atty., John Peter Lulinski, John Powers Crowley, Barry J. Freeman, Richard A. Makarski, Asst. U. S. Attys., Chicago, Ill., Lawrence Jay Weiner, Asst. U. S. Atty., of counsel, for appellee.

Before SCHNACKENBERG, CASTLE and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

Austin Harris, Joseph Lyle, and two others were charged in an indictment with conspiracy to sell a quantity of heroin in violation of 21 U.S.C. § 174. They were charged in substantive counts with having sold narcotics on April 17, 1962 in violation of 21 U.S.C. § 174 and 26 U.S.C. § 4705(a). Additionally, Lyle and one Leroy Cates were charged with similar substantive offenses occurring on April 24, 1962.

A jury found both defendants guilty on all counts. The district court sentenced Harris to seven years and Lyle to twelve years imprisonment on each count, the sentences to run concurrently.

The defendants contend that the Government failed to prove the conspiracy charge, proving, rather, three separate sales of narcotics, one involving a transaction between an alleged coconspirator, Richard Stepney, and narcotics agent Clarence Cook, another involving a transaction between defendants Harris and Lyle and agent Cook, and a third transaction between Lyle and Cook. The defendants argue that they were prejudiced by the admission into evidence of these "unrelated" sales.

A brief résumé of the testimony demonstrates that the defendants' contention has no merit.

Agent Clarence Cook of the Federal Bureau of Narcotics met Richard Stepney through an informer on April 16, 1962. The next day the agent arranged to buy a "spoon" of heroin from him and asked to meet his source of supply. Stepney replied that he would have to talk to his "man" about it. Stepney, the informer, and Cook drove to an apartment on Lake Park Avenue near 46th Street in Chicago. Cook gave Stepney $125 and Stepney entered the rear of the building. He returned shortly and placed a package on the banister of one of the rear porches. Cook retrieved the package, which was later found to contain heroin. Before Cook left the area he saw Harris standing on the rear porch near the door where Stepney had previously entered the building.

In the afternoon of the same day, agent Cook, the informer, and Stepney again drove into the alley behind the building. Cook told Stepney that he would not buy any more heroin unless he met the source of supply. Stepney entered the building, returned with Harris, and introduced him to Cook. The four men went for a drive during which time Harris asked Cook how he liked the "stuff" he had received earlier that day. After further conversation, agent Cook arranged to purchase three "spoons" of heroin for $375. After giving Harris the money, Cook was asked where he could be contacted. Cook gave Harris the telephone number of a tavern on 70th Street. Harris said he would contact Cook about 8 p. m. that evening. Cook went to the tavern and waited until about 9 p. m., when he saw a black, unmarked cab pass by. Harris was sitting on the passenger side and Lyle was driving. Agent Cook crossed the street to a hot dog stand where he was joined shortly by Harris, who was afoot. In the meantime other narcotics agents had placed Lyle under surveillance. After letting Harris out near the tavern, Lyle drove into a nearby alley. He got out of his cab and walked to an area near a concrete post. He returned to his cab and drove to a point near the hot dog stand. About this time Harris told Cook that his source of supply wanted to look him over. He asked Cook to go for a ride with him and to follow the black, unmarked cab. They followed the cab to the alley from which it had just returned. Harris got out of Cook's car and walked to the rear of the cab. Lyle got out of the cab, pointed to a tinfoil package on the cement post, and said, "There's the stuff over there. Let's get out of here." Harris told Cook, "There's your stuff," walked to the cab, and left with Lyle. Cook retrieved the package, which was later found to contain heroin.

On the evening of April 24, 1962, agent Cook again met Lyle. Lyle asked if he were looking for Harris. Cook said yes. Lyle told Cook to go to the tavern on 70th Street, that he would contact him later. About 8:30 p. m. Lyle called Cook at the tavern and said that if he wished to buy any "stuff" he should remain in the tavern. About 9 p. m. Lyle entered the tavern and told Cook to get into the cab which was parked outside. Lyle then came out and drove off with Cook. Lyle told him that Harris and he were partners and that while Harris was not around, he would take care of Cook. Cook arranged to buy an ounce of heroin for $500. Lyle told Cook to place the money on the seat of the cab. He then drove Cook back to the tavern. About three hours later Lyle came to the tavern and told Cook that he would find his stuff inside a sock in the rear window of a cab parked near the corner. Cook left the tavern, entered the cab, which was driven by Leroy Cates, and found the sock containing a tinfoil package. Later examination disclosed that the package contained heroin.

The foregoing evidence clearly established a single conspiracy to sell narcotics in which both Harris and Lyle participated. Harris' implication in the sale on April 17, 1962 by Stepney to Cook was shown by his presence at the scene following the sale and by his later inquiry of agent Cook about the quality of narcotics purchased. On the same day, Harris negotiated another sale to agent Cook and together with Lyle de-

livered the heroin. A few days later, Lyle sold agent Cook some additional narcotics, at which time he assured Cook that Harris and he were partners. This evidence was sufficient to show that Harris and Lyle were in business together in the sale of narcotics. Accordingly, all of the evidence could properly be considered against both defendants as to the conspiracy count. But even assuming that a conspiracy was not proved, the independent evidence of the separate transactions, under proper instructions from the trial court, supported the convictions of the defendants on the substantive counts. Schaffer v. United States, 362 U.S. 511, 516, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960).

The judgments of conviction are affirmed.